Larry McLAIN, Plaintiff,

v.

Tony MILLIGAN and Town of Rumford, Defendants.

Civ. No. 93–129–P–C.

United States District Court, D. Maine.

Feb. 15, 1994.

Thomas S. Carey, Carey & Associates, Rumford, ME, for plaintiff.

Jeffrey T. Edwards, Edward R. Benjamin, Jr., Preti, Flaherty, Beliveau & Pachios, Portland, ME, for defendant.

*MEMORANDUM OF DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

GENE CARTER, Chief Judge.

This case arises out of the entry into the home and warrantless arrest of Plaintiff Larry McLain in the Town of Rumford, Maine, by Defendant police officer Tony Milligan. In a ten-count Complaint against Defendants Milligan and the Town of Rumford, Plaintiff alleges that Defendant Milligan and another police officer entered his home without consent, arrested him without probable cause, and used excessive force in carrying out his arrest. Plaintiff alleges that Milligan's actions render him and the Town liable for the commission of several state law torts, violation of various state statutes, and violation of his civil rights under the United States and the Maine Constitutions.[1] Plaintiff's Complaint (Docket No. 1).

Defendants have moved for summary judgment on all Counts. Motions by Defendant Rumford and Defendant Milligan for Summary Judgment (Docket Nos. 14 & 17, respectively). Under Federal Rule of Civil Procedure 56(c), this Court can grant summary judgment *only if* "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Because the Court finds that genuine issues of material fact are in dispute with respect to all of the factual allegations underlying Plaintiff's Complaint, this Court will deny summary judgment to Defendant Town of Rumford on all Counts. This Court will also deny summary judgment to Defendant Milligan on Counts IX and X with respect to the allegations of unlawful entry into Plaintiff's home, unlawful arrest, and excessive use of force in violation of Plaintiff's civil rights pursuant to section 1983 and the Maine Civil Rights Act. 42 U.S.C. § 1983 and 5 M.R.S.A. § 4682, respectively. This Court will further deny summary judgment to Defendant Milligan on Counts IV and VI with respect to the tort

---

1. The specific allegations in Plaintiff's Complaint are as follows: Count I (negligence and gross negligence); Count II (negligent supervision, training, and *respondeat* superior against Defendant Town of Rumford); Count III (trespass and invasion of privacy); Count IV (assault and battery and excessive use of force); Count V (false arrest and false imprisonment); Count VI (wanton or oppressive conduct in carrying out Plaintiff's arrest in violation of 15 M.R.S.A. § 704); Count VII (malicious prosecution); Count VIII (infliction of emotional distress); and Counts IX and X (civil rights violations pursuant to state and federal civil rights statutes, 5 M.R.S.A. § 4682 and 42 U.S.C. § 1983, respectively).

Plaintiff has stipulated to withdrawing the allegation, included in Count IX, that Defendants violated Title 17, section 2931 of Maine's Revised Statutes Annotated as that provision is limited to criminal, and not civil, actions. Plaintiff's Opposition to Defendant Town of Rumford's Motion for Summary Judgment (Docket No. 21) at 6.

claim of excessive use of force and the statutory claim of using wanton or oppressive conduct in effecting Plaintiff's warrantless arrest, 15 M.R.S.A. § 704. This Court will grant summary judgment to Defendant Milligan on the remaining state law counts, finding that Defendant is immune from suit on these claims under the discretionary function provision of the Maine Tort Claims Act. 14 M.R.S.A. § 8111(1)(C).

### I. FACTS

The undisputed facts in this case are stated in the light most favorable to Plaintiff for the purposes of these Motions for Summary Judgment. On the evening of October 26, 1992, the Rumford Police Department received a phone complaint from a neighbor complaining of loud and unreasonable noise coming from a party in Plaintiff's apartment. Affidavit of Defendant Officer Tony Milligan at ¶2 ("Milligan Affidavit"), attached as Exhibit A to Defendant Milligan's Statement of Uncontroverted Facts (Docket No. 19). Just after 10:00 p.m., two other neighbors knocked on Plaintiff's door to complain about the noise. In response, Plaintiff and several other people moved their party from the kitchen to the living room, cut off the music that was playing, and began watching television. Deposition of Larry McLain at 57–58 ("Plaintiff Depo."), attached to Plaintiff's Statement of Material Facts in Opposition to Defendant Tony Milligan's Motion for Summary Judgment (Docket No. 24).

Defendant Milligan and another police officer, Donald McKeen, went to Plaintiff's apartment to follow up on the initial complaint. Milligan Affidavit at ¶¶2–3. When the officers knocked, Plaintiff's roommate, Patti Shannon, answered the door. The officers told Shannon about the complaint, and said that they needed to speak to the guests. The officers then followed Shannon into the living room to ask everyone to keep the noise down.[2] Id. at ¶4 and Deposition of Patti Shannon at 47–50 ("Shannon Depo."), attached to Plaintiff's Statement of Material Facts in Opposition to Defendant Tony Milligan's Motion for Summary Judgment (Docket No. 24).

The officers proceeded to record everyone's name, social security number, and address, to facilitate filing charges of disorderly conduct in the event that they would have to return to the apartment in response to additional noise complaints. Milligan Affidavit at ¶¶4–5 and Plaintiff Depo. at 63. While the officers were collecting information from those in the room, Plaintiff, who had identified himself as a renter of the apartment, complained repeatedly that the noise problem had been taken care of, that the officers should leave his apartment, and that they should not be questioning his guests.[3] Plaintiff Depo. at 62–68. Following Plaintiff's second complaint, Defendant Milligan threatened to arrest Plaintiff for disorderly conduct if he interrupted the officers again. When

2. The facts surrounding the officers' entry into Plaintiff's apartment are in dispute. Defendant Milligan asserts that Plaintiff's roommate, Patti Shannon, "invited the officers into the apartment and led them to the living room where the other guests were located." Milligan Affidavit at ¶4. Shannon, on the other hand, states that she never consented by voice or by gesture to the officers' entry into the apartment. Affidavit of Patti Shannon ("Shannon Affidavit") at ¶¶4–5, attached to Plaintiff's Statement of Material Facts (Docket No. 24). She alleges that she heard a knock at the door, stepped back as she pulled the door open, and saw two police officers standing at the threshold. Deposition of Patti Shannon at 49, attached to Plaintiff's Statement of Material Facts (Docket No. 24). Then, "[w]ithout my saying anything or making any motion toward them they walked right into the apartment." Shannon Affidavit at ¶4. When the officers asked Shannon where the other people were, she indicated that they were in the living room. "They wanted to go into the living room. I

thought they knew what they were doing so I lead [sic] them into the living room." Id. at ¶5.

3. The facts surrounding Plaintiff's interchange with the officers are sharply disputed. Plaintiff and his roommate Patti Shannon maintain that Plaintiff never raised his voice nor used any profanity in addressing the officers. According to Plaintiff and Shannon, each time Plaintiff peaceably requested that the officers leave, Defendant Milligan told him to "sit the fuck down and shut the fuck up". Plaintiff Depo. at 69–70 and Shannon Depo. at 89–90.

Defendant Milligan, on the other hand, asserts that Plaintiff was highly intoxicated and became very insistent and belligerent in ordering the officers to leave at once. Defendant Milligan states that he warned Plaintiff that he would be arrested if he didn't keep the noise down, but Plaintiff continued to yell and scream so the officers arrested him. Milligan Affidavit at ¶¶6–8.

Plaintiff asked the officers to leave a third time, they arrested Plaintiff, took him out of the apartment, and forced him to the ground to be handcuffed.[4]  Milligan Affidavit at ¶¶ 7–9. During the events which occurred as the officers executed the arrest, Plaintiff suffered a laceration over his right eye requiring six stitches, two sprained wrists, a sprained back and a twisted neck. His injuries prevented him from working in his trade of hanging sheetrock for at least one week, and he has suffered a variety of complications since the incident. Plaintiff Depo. at 76 and 81 and Plaintiff's Second Deposition at 4–6, attached to Plaintiff's Statement of Material Facts (Docket No. 24).

## II.  LIABILITY OF DEFENDANT MILLIGAN

### A.  Qualified Immunity Defense under the Maine Civil Rights Act and 42 U.S.C. § 1983

Defendant Milligan raises the defense of qualified immunity to Plaintiff's allegations in

Counts IX and X that his constitutional rights were violated, pursuant to the Maine Civil Rights Act and the federal civil rights statute. 5 M.R.S.A. § 4682[5] and 42 U.S.C. § 1983, respectively; and Memorandum in Support of Motion of Defendant, Tony Milligan, for Summary Judgment (Docket No. 18) at 9–14. The relevant inquiry for assessing whether Defendant is entitled to qualified immunity is "whether a reasonable officer could have believed" that Defendant's actions were lawful "in light of clearly established law and the information" that Defendant possessed. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). This Court has delineated a two-step analysis for assessing a claim of qualified immunity:

> First, the court must consider the more general question of whether the law establishing the right allegedly violated was 'clearly established' at the time the challenged action was taken. If the law was clearly established, the court must proceed

4. The parties strongly dispute the facts surrounding the arrest of Plaintiff. Defendant Milligan asserts that Plaintiff was aggressive and continuously resisted the officers' attempts to restrain him, so they had to force him to the ground to be handcuffed. According to Defendant, "[w]hile on the ground, Mr. McLain continued to thrash around and started to smash his head into the pavement. As a result, he sustained a laceration to his forehead which appeared to need medical attention." Milligan Affidavit at ¶¶ 9–10.

Plaintiff, on the other hand, asserts that he never resisted the officers but merely informed them that they need not use force, that he would accompany them peacefully, and that disorderly conduct was "no big deal." Plaintiff Depo. at 78. Plaintiff and Patti Shannon describe the execution of Plaintiff's arrest as follows: they allege that the officers twisted Plaintiff's arms behind his back, lifted him up, and carried him out of the apartment so that his feet did not touch the ground. *Id.* at 73 and Shannon Depo. at 66. When the officers carried Plaintiff over a partition dividing two driveways, Plaintiff's feet touched the partition and the officers kicked Plaintiff's feet out from under him, forcing him onto his knees. Defendant Milligan then allegedly pushed Plaintiff's chest and head onto the pavement, shoved his knee into Plaintiff's back, lifted Plaintiff's head up by his hair, and slammed his head onto the ground. Plaintiff Depo. at 73–78 and Shannon Depo. at 64–73.

5. Section 4682 of the Maine Civil Rights Act provides for a civil cause of action to any person whose rights, under the laws or Constitutions of

the United States or the State of Maine, have been intentionally interfered with by another person through, actual or threatened violence damage or destruction of property, or trespass. 5 M.R.S.A. § 4682.

Defendant asserts that the Maine Civil Rights Act was patterned after the federal civil rights statute. 42 U.S.C. § 1983. *See* Memorandum in Support of Motion of Defendant, Town of Rumford, for Summary Judgment (Docket No. 15) at 7–8 & 12. The Act was passed by the Maine legislature in 1989, but only a few cases have been decided by Maine courts interpreting its provisions. Defendant urges this Court to apply federal case law interpreting section 1983, particularly with respect to the issues of qualified immunity and municipal liability, in assessing the scope of Defendants' liability under the Maine Civil Rights Act. *Id.*

Both parties in this case assume that the Maine Civil Rights Act effectively waives the immunity from suit granted to governmental entities and employees under the Maine Tort Claims Act. 14 M.R.S.A. §§ 8101 *et seq.* This Court is hesitant to reach such a conclusion, especially in the absence of case law by Maine courts interpreting the Maine Civil Rights Act in like fashion. However, since both parties stipulate to applying the law interpreting section 1983 to the state civil rights act, this Court will do so at this summary judgment stage while reserving its judgment on the matter of the waiver.

to consider whether, in the specific circumstances of the challenged action, a 'reasonable officer' could have believed that the challenged action was lawful in light of the information possessed by the officers.

*Vitalone v. Curran,* 665 F.Supp. 964, 973–74 (D.Me.1987).

Plaintiff alleges that Defendant violated his constitutional rights by (1) entering his home without a warrant and without consent; (2) arresting him without probable cause; and (3) using excessive force in executing his arrest. The parameters of a citizen's Fourth Amendment rights in these three areas have been 'clearly established' in decisions issued by the United States Supreme Court and the Court of Appeals for the First Circuit. *See Payton v. New York,* 445 U.S. 573, 576, 100 S.Ct. 1371, 1374, 63 L.Ed.2d 639 (1980) (holding that the Fourth Amendment prohibits police from making a warrantless and non-consensual entry into a private home); *Hall v. Ochs,* 817 F.2d 920, 925 (1st Cir.1987) (holding that the "right to be free from unreasonable seizures of the person was ... well established by 1980"); and *Fernandez v. Leonard,* 784 F.2d 1209, 1214–15 (1st Cir. 1986) (holding that the right to be free from the use of excessive force has been well established since 1976). Hence, the question for each alleged civil rights violation is narrowed to the issue of whether a reasonable officer could have believed that Defendant Milligan's actions were lawful, given the established law and the information that he possessed.

### 1. *Consent*

■ This Court will deny qualified immunity to Defendant Milligan on the issue of whether the officers obtained consent to enter Plaintiff's apartment because genuine issues of material fact are in dispute precluding summary judgment. Defendant Milligan asserts that prior to entering the apartment, he and officer McKeen informed Plaintiff's roommate, Patti Shannon, about the noise complaint and asked if they could speak with her guests. While unable to recall the exact words or gestures used by Shannon, Defendant asserts that Shannon freely and voluntarily invited the officers into the apartment and led them to the living room. Milligan

Affidavit at ¶ 4. Shannon, on the other hand, states that she heard loud knocks on the door and opened it, without any knowledge of who was standing there. "[B]ecause the door opened inwards, I had to move out of the way to open the door, and when I opened the door the cops stepped in." Shannon Depo. at 49. Shannon asserts that she never consented by voice or by gesture to the officers' entry into the apartment:

> The way they entered I presumed they had the right to do what they were doing. I was not going to argue with them. They wanted to know where the other people were. I told them they were in the living room. They wanted to go into the living room. I thought they knew what they were doing so I lead [sic] them into the living room. At no time did I give any consent for them to enter the apartment.

Shannon Affidavit at ¶ 5. There is no evidence, however, that Shannon affirmatively objected to the entry of the officers.

■ Under Maine law, an objective manifestation of consent to a warrantless search may include a gesture, such as stepping away after opening a door. *Robbins v. MacKenzie,* 364 F.2d 45 (1st Cir.1966) (holding that, where police officer informed occupant that he would like to speak to occupant and occupant unlocked the apartment door and walked back into the kitchen, occupant's actions were sufficient to constitute consent to entry), *cert. denied,* 385 U.S. 913, 87 S.Ct. 215, 17 L.Ed.2d 140 (1966); *see also State v. Mitchell,* 390 A.2d 495 (Me.1978), and *State v. McLain,* 367 A.2d 213, 216–17 (Me.1976) (holding that, where occupant was informed while outside of his house of the identity of the police officers and the purpose of their investigation, his gesture of holding the door open to his house and looking back toward the officers was sufficient to constitute consent to entry). While gestures may be sufficient to signal consent, however, the facts of such cases have established that the individual was informed of the identity of the police and the purpose of the entry *prior to* manifesting consent through gesture. As the Court of Appeals for the First Circuit has indicated:

When a householder, knowing the identity and purpose of his caller, opens his door and turns back inside, he expresses by his actions as adequate a consent to entry as he would by a verbal invitation. To be distinguished are cases where the householder opens a door not knowing who is there and finds himself faced with armed authority. In such cases the act of opening the door may merely be to see who is there, and turning back may only be retreating.

*MacKenzie,* 364 F.2d at 48.

The facts in dispute in this case relate to (1) whether the officers announced their identity and purpose prior to entering the apartment and (2) whether Shannon made any gesture or verbal signal that could be read as indicating her consent to their entry. The resolution of these disputed facts is essential for conducting the qualified immunity inquiry of whether any reasonable officer could view Defendant's actions as lawful, given the circumstances and the clearly established law governing warrantless entry into a home. Consequently, Defendant Milligan is not entitled to summary judgment on the claim, in Counts IX and X, alleging that his entry into Plaintiff's home violated the Fourth Amendment pursuant to section 1983 and the Maine Civil Rights Act. 42 U.S.C. § 1983 and 5 M.R.S.A. § 4682.

### 2. *Plaintiff's Arrest*

■ Defendant Milligan is also not entitled to qualified immunity with respect to the allegation in Counts IX and X that his warrantless arrest of Plaintiff was without probable cause, in violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizures. The facts underlying Plaintiff's arrest are in dispute, with Defendant alleging that he had probable cause because he observed Plaintiff commit the violation of disorderly conduct by acting belligerently and screaming and yelling at the officers to leave his apartment. Milligan Affidavit at ¶¶ 6–8. Plaintiff, on the other hand, asserts that he never raised his voice nor used any vulgarities but simply requested politely that the officers had overstayed their invitation and should leave his home. Plaintiff Depo. at 68–72 and Shannon Depo. at 59–61 & 89–

90. The Court of Appeals for the First Circuit has indicated that "[i]f what the policeman knew prior to the arrest is genuinely in dispute, and if a reasonable officer's perception of probable cause would differ depending on the correct version, that factual dispute must be resolved by a fact finder." *Prokey v. Watkins,* 942 F.2d 67, 73 (1st Cir.1991). Hence, Defendant Milligan's Motion for Summary Judgment on the issue of the lawfulness of Plaintiff's arrest will be denied.

### 3. *Use of Excessive Force*

■ Nowhere are the facts more in dispute than with respect to whether Defendant Milligan used excessive force in executing Plaintiff's arrest. Defendant asserts that Plaintiff was belligerent and resisted arrest, forcing the officers to push him to the ground and handcuff him forcefully. Meanwhile, Plaintiff allegedly continued to thrash on the ground, banging his head into the concrete. Milligan Affidavit at ¶¶ 9–10. Plaintiff and Shannon, on the other hand, assert that Plaintiff never resisted arrest; yet the officers twisted his arms behind his back, picked him up off the floor, and carried him out of the apartment. Once outside the apartment, Defendant allegedly kicked Plaintiff's legs out from under him, forced him to his knees, slammed his chest and face onto the concrete, placed his knee down on Plaintiff's back, picked his head up by the hair and slammed his face down onto the pavement. Plaintiff's Depo. at 73–78 and Shannon's Depo. at 64–73.

■ The clearly established legal test regarding the use of force when this incident occurred was whether the force used by Defendant Milligan was "consistent with the amount of force that a reasonable police officer would think necessary to bring the arrestee into custody." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 205 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991). In making this determination, courts consider the circumstances of each case, including the severity of the crime allegedly committed, whether the suspect posed an immediate threat to the officers, and whether he was

actively resisting arrest. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).

Whether or not Defendant Milligan knowingly violated these clearly established principles depends entirely on which version of the facts is adopted as the basis for assessing his actions in executing Plaintiff's arrest. This factual dispute must be resolved by a factfinder and precludes this Court from ruling in Defendant's favor on this Motion for Summary Judgment. As the Court of Appeals for the First Circuit stated in addressing a similar situation:

> While there are circumstances in which reasonable police officers, and, indeed, reasonable courts may differ as to whether the force used was excessive, this case presented no such circumstances.... [T]he parties presented dramatically opposed testimony. If the jury believed the officers, plaintiffs would not recover. But if the jury believed the plaintiffs, the force used was clearly excessive, and the officers would have had no qualified immunity. Accordingly, the trial judge was proper [sic] in denying defendants' motion for qualified immunity.

*Hall v. Ochs,* 817 F.2d 920, 925–26 (1st Cir. 1987). Similarly in this case, because genuine issues of material fact are in dispute with respect to the use of force by Defendant Milligan, Defendant's Motion for Summary Judgment will be denied.

### B. Defendant Milligan's Liability for State Law Claims

■ Defendant Milligan argues that he is entitled to summary judgment with respect to Plaintiff's state law tort claims because he is immune from liability for such actions under the Maine Tort Claims Act. 14 M.R.S.A. §§ 8101 *et seq.* Section 8111(1)(C) of the Act provides immunity to employees of governmental entities for "[t]he performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." 14 M.R.S.A. § 8111(1)(C). In determining whether an officer is carrying out a discretionary function, Maine courts focus on whether he is required to use his judgment while acting in further-

ance of a departmental policy or legislatively imposed duty. *Moore v. Lewiston,* 596 A.2d 612, 616 (Me.1991). Defendant's decision to enter Plaintiff's home, to execute a warrantless arrest, and to file charges against Plaintiff all required the exercise of judgment and hence qualify as discretionary functions under the Act. *See Leach v. Betters,* 599 A.2d 424, 426 (Me.1991) (holding that making a warrantless arrest is a discretionary function under the Maine Tort Claims Act), and *Dall v. Caron,* 628 A.2d 117, 119 (Me.1993) (holding that decision to bring criminal charges is a discretionary function under the Maine Tort Claims Act).

Maine law generally provides absolute immunity for a police officer exercising discretionary functions unless the officer's conduct "clearly exceeded, as a matter of law, the scope of any discretion he could have possessed in his official capacity as a police officer." *Polley v. Atwell,* 581 A.2d 410, 414 (Me.1990); *see also Dall,* 628 A.2d at 119 (holding that police officers are absolutely immune from malicious prosecution suit regardless of bad faith), and *Maquire v. Municipality of Old Orchard Beach,* 783 F.Supp. 1475, 1487 (D.Me.1992) (holding that warrantless impoundment of car and warrantless seizure of an individual, even if "deliberately indifferent or reckless," will not support conclusion that such conduct clearly exceeded officers' discretion; however, an officer who threatened plaintiff while in jail was clearly acting outside the scope of his discretion and not entitled to immunity). Maine courts have recognized only one possible limitation on this grant of absolute immunity, which is found in a statute allowing for a civil damages action against any officer who acts "wantonly or oppressively" in making a warrantless arrest. 15 M.R.S.A. § 704. *See also Leach,* 599 A.2d 424 (where Maine Law Court assumed, but did not decide, that discretionary function immunity under the Maine Tort Claims Act does not apply to wanton and oppressive conduct in connection with making an arrest).

■ Given this strict reading of the discretionary immunity provision, this Court finds that, as a matter of law, Defendant Milligan is entitled to immunity on the

Counts in Plaintiff's Complaint which allege tort law violations stemming from Defendant's entry into Plaintiff's home, determination of probable cause for Plaintiff's arrest, and the decision to file charges against Plaintiff. Those Counts are Count I (negligence and gross negligence), Count III (trespass and invasion of privacy), Count V (false arrest and false imprisonment), Count VII (malicious prosecution), and Count VIII (infliction of emotional distress). *See* Plaintiff's Complaint (Docket No. 1). This Court further finds, however, that genuine issues of material fact are in dispute as to whether Defendant's conduct in executing Plaintiff's arrest could be found to constitute "wanton or oppressive" force. Hence, Defendant is *not* entitled to summary judgment on Count IV, alleging assault, battery, and excessive force, nor he is entitled to summary judgment on Count VI, alleging a violation of the statutory prohibition on the use of wanton or oppressive force in executing a warrantless arrest. 15 M.R.S.A. § 704.

### III. LIABILITY OF TOWN OF RUMFORD

#### A. Municipal Liability under the Maine Civil Rights Act and Section 1983

Plaintiff asserts that the Town of Rumford is liable for the violation of his state and federal constitutional rights pursuant to the Maine Civil Rights Act and Section 1983.[6] 5 M.R.S.A. § 4682 and 42 U.S.C. § 1983, respectively. To state a claim of municipal liability under section 1983, Plaintiff must establish that:

> (1) there existed a municipal custom or policy of deliberate indifference to the commission of constitutional violations by police officers; and (2) this custom or policy was the cause of, and moving force behind, the particular constitutional deprivation of which he was complaining.

*Foley v. City of Lowell, Mass,* 948 F.2d 10, 14 (1st Cir.1991). Defendant argues that Plaintiff has produced *no* evidence indicating that the Town of Rumford's policies of training and supervising its police force amounts to "deliberate indifference," nor has Plaintiff established any causal link between the Town's policies and the alleged misconduct of Defendant Milligan. *See* Memorandum in Support of Motion by Defendant, Town of Rumford, for Summary Judgment (Docket No. 15) at 10. This Court disagrees and finds that genuine issues of material fact are in dispute, precluding the Court from granting Defendant's Motion.

■ Plaintiff puts forward two theories for holding Defendant Town of Rumford liable under section 1983: (1) the Town's inadequate training program in the use of force and (2) its inadequate supervision and discipline of Defendant Milligan. Plaintiff's Opposition to Defendant Town of Rumford's Motion for Summary Judgment (Docket No. 21) at 3. With respect to the first theory, Plaintiff points to evidence indicating that the only *specific* training that the Town makes available to its officers on the use of force is a video tape which officers are not required to view. Deposition of Rumford Chief of Police Dewey Robinson at 17 ("Robinson Depo."), attached to Plaintiff's Statement of Material Facts (Docket No. 22). There is also a written policy on the use of force, which states that "[t]he department expects that officers will employ the minimum force necessary to accomplish a legal purpose." Robinson Depo. at 37. When officers are hired, they are given a manual that includes this policy and are told to read the manual, but there is no procedure in place to indicate whether or not the officers have in fact read and understood the policy. *Id.* at 25–27.

Defendant does not contest these facts but asserts that all officers are required to graduate from the Maine State Police Academy and to attend refresher courses, in-service training programs, and police specialty courses. Affidavit of Chief Dewey Robinson at ¶ 3 ("Robinson Affidavit"), Exhibit A, attached to Defendant's Statement of Uncontroverted Facts (Docket No. 16). Nowhere does Defendant make any mention of specific

---

**6.** See n. 5, *supra,* for a discussion of the legal standard applied by this Court for assessing the scope of Defendant's liability under the Maine Civil Rights Act for the purposes of these Motions for Summary Judgment.

training in the use of force, which is the precise area implicated by the arrest in this case. The facts before this Court, then, leave unresolved the issue of whether the Municipality's training program is constitutionally adequate. If, as Plaintiff asserts, an optional videotape and a written policy on the use of force are the only materials dealing with the proper use of force that a Rumford police officer *might* be exposed to, these facts could establish an inadequate training policy sufficient for a finding of municipal liability under section 1983.[7] 42 U.S.C. § 1983. Given the inevitability that police officers will be required to make split-second judgments regarding the use of force, the policy alleged by Plaintiff could be viewed as one of deliberate indifference to the constitutional rights of citizens. As the Supreme Court has noted, "[i]n resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform":

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989).

■ With respect to the municipality's policy of supervision and discipline, Defendant Town of Rumford asserts that all complaints of police misconduct are fully investigated and appropriate disciplinary action taken if misconduct is verified. Robinson Affidavit at ¶ 4. The Town further asserts that Defendant Milligan has been found free of fault in all citizen complaints filed against him and has an exemplary record as a police officer. *Id.* at ¶¶ 6–7. Plaintiff, on the other hand, asserts that the Town's manner of reviewing citizen complaints reflects a policy

of deliberate indifference to the commission of constitutional violations by its officers. More specifically, Plaintiff points to Defendant Town's handling of three citizen complaints of excessive force filed against Defendant Milligan in a period of less than two years—from December of 1990 until October of 1992 when the events in this case took place. *See* Plaintiff's Statement of Material Facts (Docket No. 22) at ¶¶ 8–10; Deposition of Tony Milligan at 36–40 (Milligan Depo.), attached to Plaintiff's Statement of Material Facts (Docket No. 22); and Robinson Depo. at 61.

In all three situations, Plaintiff asserts that the investigation, at most, consisted of reading the citizen's complaint and Defendant Milligan's report and soliciting Milligan's oral account of the incident, with no further action taken. *See* Plaintiff's Statement of Material Facts (Docket No. 22) at ¶¶ 7–11 and Robinson Depo. at 49–50 & 62. Rumford Chief of Police, Robinson, stated that in reviewing complaints of excessive force, he tends to believe what is in the officer's report. Robinson Depo. at 62 & 71. In assessing the three complaints filed against Defendant Milligan, including the incident currently before the Court, Robinson indicated that he believed there was no evidence to cast suspicion on the competence of Defendant Milligan. Robinson Depo. at 62. Consequently, he has never spoken to Defendant Milligan with respect to his understanding of Departmental policy on the use of force, has never required him to view the video on use of force, and has never conducted an investigation to corroborate Defendant Milligan's account of the incidents where he allegedly used excessive force. Robinson Depo. at 67 and Defendant Town of Rumford's Answers to Interrogatories at 27, attached to Plaintiff's Statement of Material Facts (Docket No. 22).

This Court finds that genuine issues of material fact are in dispute with respect to

---

7. Plaintiff also alleges that Defendant Town of Rumford's training policy with respect to warrantless searches of private homes is constitutionally inadequate. *See* Plaintiff's Opposition to Defendant Town of Rumford's Motion for Summary Judgment (Docket No. 21) at 4. However, Plaintiff has not produced sufficient evidence to

create a genuine issue of material fact with respect to the Town's training on warrantless searches. Hence, this Court finds that the evidentiary record supports denial of summary judgment only on the basis of Defendant's training and supervision with respect to the use of force.

the adequacy of Defendant Town of Rumford's policy of supervision and discipline, precluding summary judgment. If, as Plaintiff asserts, the policy amounts to a toleration of constitutional violations committed by officers, then such a finding at trial could support the municipality's liability under section 1983. In *Foley*, the Court of Appeals for the First Circuit wrote that "the lack of restraint [defendant] police officers exhibited" in prior incidents of misconduct "suggested the existence of an official policy of tolerating imbrutage." 948 F.2d at 14. The Court of Appeals went on to cite favorably two district court cases holding that a municipality's inaction in response to prior complaints of officer misconduct could support an inference of encouragement of constitutional violations and supply a basis for the municipality's liability. *See Carter v. District of Columbia*, 795 F.2d 116, 124 (D.C.Cir.1986), and *Skibo v. City of New York*, 109 F.R.D. 58, 65 (E.D.N.Y.1985).

**B. Standard for Immunity of Governmental Entity under Maine Tort Claims Act, 14 M.R.S.A. §§ 8103 & 8116**

█ Defendant Town of Rumford asserts that it is entitled to summary judgment on all Counts alleging tort violations because it is immune from civil damages suits under section 8103 of the Maine Tort Claims Act. 14 M.R.S.A. § 8103.[8] While the Act grants immunity to governmental entities on all but a narrow category of claims, section 8116 specifically provides that a municipality waives this immunity if it procures insurance that covers risks in areas where it would otherwise be immune. 14 M.R.S.A. § 8116.[9] Further, the Maine Law Court has held that the governmental entity bears the burden of

establishing whether or not it is insured for a particular claim. *See, e.g., Hill v. Town of Lubec*, 609 A.2d 699 (Me.1992). Defendant Town of Rumford has provided only a conclusory allegation that it is immune under section 8103 of the Maine Tort Claims Act. 14 M.R.S.A. § 8103. Plaintiff, on the other hand, points to an interrogatory answer submitted by the Town of Rumford indicating that the Town is protected by an insurance policy indemnifying it against the type of risk on which Plaintiff's claim is based. *See* Defendant Town of Rumford's Answers to Interrogatories at question 43, attached to Plaintiff's Statement of Material Facts in Opposition to Defendant Town of Rumford's Motion for Summary Judgment (Docket No. 22). Because Defendant has clearly failed to meet its burden on the issue of immunity under the Maine Tort Claims Act, this Court will deny the Town of Rumford's Motion for Summary Judgment on all Counts against it alleging tort law violations.[10]

### IV. PUNITIVE DAMAGES

█ Defendants assert that they are entitled to summary judgment on Plaintiff's punitive damages claims on all Counts. This Court will grant summary judgment to Defendant Town of Rumford on Plaintiff's punitive damages claims in Counts IX and X pursuant to the Maine Civil Rights Act and section 1983. 5 M.R.S.A. § 4682 and 42 U.S.C. § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (holding that municipalities are not liable for punitive damages on claims under section 1983).[11] *See also*

---

**8.** Section 8103(1) provides in relevant part that:
   Except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages.
   14 M.R.S.A. § 8103(1).

**9.** Section 8116 provides in relevant part that:
   The legislative or executive body or any department of the State or any political subdivision may procure insurance against liability for any claim against it or its employees under this chapter.... If the insurance provides coverage in areas where the governmental entity is immune, the governmental entity shall be liable in those substantive areas but only to the limits of the insurance coverage.

14 M.R.S.A. § 8116.

**10.** Those Counts are Count I (negligence and gross negligence); Count II (negligent supervision, negligent training, and *respondeat* superior); Count III (trespass and invasion of privacy); Count IV (assault); Count V (false arrest and false imprisonment); Count VII (malicious prosecution); and Count VIII (infliction of emotional distress).

**11.** This Court would like to direct the attention of counsel for *both* parties to the fact that they mistakenly cited this case in their briefs, using an improper case name and citation.

Plaintiff's Opposition to Defendant Town of Rumford's Motion for Summary Judgment (Docket No. 21) at 7–8.[12] However, because Defendant Town of Rumford has failed to satisfy its burden of proving that it has no insurance coverage for the alleged state tort violations, this Court will deny summary judgment on the punitive damages claims against it in Counts I, II, III, IV, V, VII, and VIII because factual issues must be resolved at trial with respect to whether Defendant's insurance policy covers these claims.[13] Further, this Court will deny summary judgment on the punitive damages claims against Defendant Milligan in Counts IX and X because genuine issues of material fact are in dispute with respect to whether Defendant acted with "evil motive or intent" or with "reckless or callous indifference" when he allegedly violated Plaintiff's civil rights pursuant to section 1983 and the Maine Civil Rights Act. 42 U.S.C. § 1983 and 5 M.R.S.A. § 4682. *Davet v. Maccarone,* 973 F.2d 22, 27 (1st Cir.1992) (setting forth the legal standard for awarding punitive damages under section 1983). This Court will also deny summary judgment on the punitive damages claims against Defendant Milligan in Counts IV and VI with respect to alleged excessive use of force in executing Plaintiff's arrest because genuine issues of material fact are in dispute with respect to whether Defendant's actions constituted "implied" or "express" malice under Maine law, warranting the imposition of punitive damages. *See Tuttle v. Raymond,* 494 A.2d 1353 (Me.1985) (setting forth the elements necessary to support a punitive damages claim).

Accordingly, it is *ORDERED* that Defendant Town of Rumford's Motion for Summary Judgment be, and it is hereby, *DE-NIED* on all Counts in Plaintiff's Complaint, except that Defendant Town of Rumford's Motion for Summary Judgment on the punitive damages portion of Counts IX and X be, and it is hereby, *GRANTED.* It is further *ORDERED* that Defendant Milligan's Motion for Summary Judgment be, and it is hereby, *DENIED* on Counts IX and X with respect to the allegations of unlawful entry, unlawful arrest, excessive use of force, and punitive damages, and on Counts IV and VI with respect to the tort and statutory claims of excessive use of force and punitive damages. It is also *ORDERED* that Defendant Milligan's Motion for Summary Judgment be, and it is hereby, *GRANTED* on the remaining tort claims in Count I, Count III, Count V, Count VII, and Count VIII.

---

12. Plaintiff attempts to argue that the Town of Rumford is immune from punitive damages *only* under section 1983 and that the Court should allow the punitive damages claim to go forward pursuant to the Maine Civil Rights Act. Plaintiff's Opposition to Defendant Town of Rumford's Motion for Summary Judgment (Docket No. 21) at 7–8. However, both parties stipulate to the application of federal law interpreting section 1983 in assessing the scope of Defendants' liability under the Maine Civil Rights Act. *See* n. 5, *supra.* This Court, having accepted this stipulation solely for the purpose of these Summary Judgment Motions, sees no reason to find federal law under section 1983 inapplicable to the Maine Act solely on the issue of punitive damages.

13. While section 8105 of the Maine Tort Claims Act provides immunity from liability for punitive damages, section 8116 of the Act overrides that immunity to the extent that the municipality has obtained insurance. 14 M.R.S.A. §§ 8105 and 8116. The types of risk covered and the amount of coverage provided by the Town of Rumford's insurance policy will determine whether, and to what extent, punitive damages are available against it in the current action.