Roger A. FOWLES, Plaintiff

v.

Gregory STEARNS, et al., Defendants.

Civ. No. 94–241–P–C.

United States District Court,
D. Maine.

May 17, 1995.

Philip P. Mancini, Cloutier & Briggs, Rockport, ME, for plaintiff.

Mark G. Lavoie, Russell Pierce, Norman, Hanson & Detroy, Portland, ME, for defendants Gregory Stearns, Lance McLeish, Ronald Cameron and Mark Schade.

John C. Walker, Shaun B. Lister, John C. Walker & Associates, Portland, ME, for defendant Waldo County.

## MEMORANDUM AND ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

GENE CARTER, Chief Judge.

Plaintiff Roger Fowles (hereafter "Fowles") brings this action seeking damages for injuries he received as a result of Defendants' alleged violations of his civil rights. Defendants are three Waldo County Sheriff's deputies, one corrections officer of the Waldo County Sheriff's Department, and Waldo County itself (collectively, "Defendants"). Plaintiff seeks relief under both 42 United States Code section 1983 (Count I) and under the Maine Civil Rights Act, 5 M.R.S.A. §§ 4681–85, (Count II). Now before the Court is a Motion for Summary Judgment (Docket No. 14), filed on behalf of all Defendants, seeking an entry of judgment in their favor on both counts.

■ The Court of Appeals for the First Circuit has articulated the legal standard to be applied in deciding motions for summary judgment:

> [T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent

to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2510]; *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial' *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511. *Brennan v. Hendrigan*, 888 F.2d 189, 191–92 (1st Cir.1989). Accordingly, this Court will review the evidence presented on this motion in a light most favorable to Plaintiff, the nonmoving party here. The material facts, as presented by Fowles in his opposition to this motion, are as follows.

### I. PLAINTIFF'S ALLEGATIONS

On June 7, 1992, during the early morning, Fowles and Deborah H. Peaslee (hereafter "Peaslee"), left the 10–4 Diner, a dance club located in Liberty, Maine. Fowles and Peaslee reside together in Washington, Maine. The 10–4 Diner permits its patrons to bring and consume their own alcoholic beverages on its premises and, earlier that evening,

Fowles and Peaslee had purchased a pint of coffee brandy for this purpose.

When they left the club Peaslee was driving. They had not travelled far before she was pulled over by Defendant Waldo County Deputy Mark Schade (hereafter "Schade") for allegedly going through a stop sign. As Schade was asking Peaslee for her license and registration, a second Waldo County Sheriff's vehicle, operated by Defendant Deputy Lance McCleish (hereafter "McCleish"), pulled up to the scene. McCleish walked over to Fowles's side of the car. A third sheriff's department vehicle, driven by Defendant Deputy Gregory Stearns (hereafter "Stearns"), arrived shortly after McCleish. Stearns walked over to Fowles's side of the vehicle as well.

In response to questioning by Stearns, Fowles allegedly informed the officers of his identity and the fact that he was on probation as a result of a previous conviction. Stearns and McCleish left Fowles to return to one of the cruisers and, after a few minutes, they allegedly resumed their questioning of Fowles with "So you like to beat cops, huh?" which Fowles considered to be a reference to the fact that his probation resulted from a conviction of assaulting a police officer. The officers demanded that Fowles get out of the car and, after initially refusing to do so, Fowles complied.

Next, Fowles claims that he was handcuffed behind his back and then pushed to the ground by McCleish or Stearns. The officers proceeded to kick Fowles, pull him by his hair, and beat him with a flashlight.

At some point, Schade also became involved in the struggle with, and the eventual arrest of, Fowles.[1] Fowles was placed in the back seat of Stearns's vehicle for transport to the Waldo County Jail in Belfast.[2] *En route* to the jail, Fowles shouted at Stearns from the back seat, and Stearns responded by slamming on the brakes, pulling the car over to the side of the road, opening the back door, and demanding that Fowles get out of the car. When Fowles refused, Stearns allegedly sprayed him with mace, shut the door, and resumed the drive to Belfast.

When Fowles and Stearns arrived at the jail, McCleish was also present, and the two officers allegedly resumed their assault of Fowles. Fowles was finally taken into the jail where Defendant Corrections Officer Ronald Cameron began, but did not complete, the booking process on Fowles.[3] The jail intake form contained the written statement "I recommend that Mr. Fowles be examined by a physician." It was noted on a "medical screening form" that Fowles had bruises and abrasions on his face, arms, shoulders, and left hip.[4] "Booking" was not completed at that time, and no steps were taken to provide medical attention to Fowles's injuries. Instead, Fowles was placed in the jail's "drunk tank," where Stearns allegedly assaulted and maced Fowles a final time. Fowles also claims that he remained handcuffed for a period of time after being placed in the cell. Fowles was processed and released later that morning and finally saw a doctor that afternoon when he was taken to a hospital by his friends.[5]

1. During his deposition, Fowles said that he could not be sure who inflicted which injuries once the assault began, but he was certain that he heard three different voices during the incident. Transcript of Deposition Testimony of Roger Fowles at 111.

2. Peaslee was also taken to the jail but traveled in Deputy Schade's cruiser. A "breath test" administered at the jail revealed a blood-alcohol level of .18, and she was charged with operating a vehicle under the influence of alcohol.

3. It appears to be undisputed that Fowles was *not booked upon his arrival at the jail* at approximately 2:00 a.m. but that booking was completed later that morning, after Cameron's shift had ended.

4. From the record presented on this motion, it is unclear who wrote these remarks on the intake and medical screening forms, nor is it certain when the observations were made.

5. The facts presented by the parties on this motion are sharply disputed. By Defendants' recitation of the events, Fowles interfered with Schade's questioning of Peaslee by telling her not to say anything to Schade and then by getting out of the car and walking around to the driver's side of her car. When Schade asked Fowles for his name and "if there was a problem," Fowles did not respond. Fowles returned to the passenger side of the car, got in, and closed the door. McCleish stated that when he pulled up in his cruiser, Fowles appeared to be intoxicated and giving Schade a hard time. When Stearns ar-

## II. DISCUSSION

### A. The County's Liability

Waldo County (hereafter "the County") seeks summary judgment on both counts of the Complaint on the basis that Fowles has failed to demonstrate that the record contains any evidence suggesting that the County could be properly held liable. In *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that a municipality could not be liable for the unconstitutional conduct of its employees under a *respondeat superior* theory. Instead, the Court stated,

> it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694, 98 S.Ct. at 2037–38. Thus, in order to impose liability on a municipality for the unconstitutional acts of its employees, a court must find the presence of an "affirmative link" between the municipality and the conduct of the employee. *Gaudreault v. Salem*, 923 F.2d 203, 209 (1st Cir.1990), *cert. denied*, 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991).

This Court will employ a two-part analysis to determine if Fowles has demonstrated the County's liability under this standard. First, the Court must consider whether an identifiable policy or custom exists which can be attributed to the County; such custom "must be so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir.), *cert. denied*, 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989). Second, the Court must be satisfied that Fowles has adequately demonstrated a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989), that "must have been the cause of and the moving force behind the deprivation of constitutional rights." *Bordanaro*, 871 F.2d at 1156.

Fowles does not make any claim that the County has officially promulgated any unconstitutional policy. Rather, he claims that the County's failure to properly train and supervise its deputies in the use of force during arrest resulted in the alleged assault on Fowles by three of its deputies. The Supreme Court in *Canton* held that a municipality's failure to train its law enforcement employees can constitute a policy or custom but only where "the need for more or different training is so obvious" that such failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388, 390, 109 S.Ct. at 1204, 1205–06.

It is not entirely clear from the pleadings in this matter precisely what conduct (or lack thereof) on the part of the County serves as the basis of Fowles's allegations against it.

rived, Defendants allege that Fowles got out of the car, angrily demanded to know what was going on, and ignored the deputies' requests that he return to the vehicle. Stearns placed his hand on Fowles's chest "because Fowles looked very angry" and Fowles grabbed Stearns's wrist with one hand and Stearns's flashlight with the other. Stearns and McCleish attempted to get Fowles under control by pulling him to the ground and also tried to get the flashlight away from Fowles. The three engaged in a "wrestling match" of sorts, and Stearns was eventually able to get the flashlight. Schade tried to assist by striking Fowles in the arm; the blow glanced off Fowles's arm and hit Fowles in the face below the eye.

Eventually, it is claimed, the deputies were able to place handcuffs on Fowles, who contin-ued to exhibit violent behavior even as he was placed in Stearns's cruiser. Stearns transported Fowles to the jail at the Waldo County Sheriff's Department, Schade drove Peaslee to the jail to administer a "breath test," and McCleish remained at the scene to await the arrival of a wrecker for the car. During the drive to the jail, Fowles allegedly continued his violent conduct by kicking the doors, windows, and divider, and yelling at Stearns. Stearns pulled over and ordered Fowles to stop kicking. When Fowles refused, Stearns opened a rear door and sprayed Fowles with mace. Stearns does not remember telling anyone that Fowles had been maced when they arrived at the jail. Fowles's identity was eventually determined through Peaslee. Stearns denies that he entered Fowles's cell at the jail.

He simply refers to a "Use of Force General Order No. 2–1," provisions of which Fowles states were not followed by the officers involved in his arrest, such as the proper use of mace and certain reporting requirements when force has been used in an arrest. Memorandum in Support of Plaintiff's Objection to Defendant's Joint Motion for Summary Judgment (Docket No. 20) at 10–11. Fowles also acknowledges, however, that the policy was not in effect at the time of his arrest and had not been in effect for nearly eighteen months. Fowles then argues that the absence of a use-of-force policy "allowed the officers free, unfettered discretion in the seizure, wrongful arrest and infliction of corporal punishment upon Mr. Fowles, without fear of reprisal due to reporting requirements." *Id.* at 11–12.

Fowles, however, presents this Court with no "evidence" of a constitutional violation beyond the mere fact that there was no use-of-force policy in effect on June 7, 1992, assuming that such an absence of policy can be considered a "custom or policy" attributable to the municipality. There is no evidence, for example, that such policies are necessary to prevent the use of excessive force by officers or that the training in the use of force provided to the County's deputies is so obviously inadequate as to suggest "deliberate indifference" on the part of County officials to the rights of persons who come into contact with the deputies.

The record in this case differs significantly from that before the Court of Appeals for the First Circuit in *Bordanaro v. McLeod* in which " 'there was direct evidence presented to the jury of the City['s] . . . failure to train and supervise its officers in a number of key areas of law enforcement and of its indifference to the circumstances of [the plaintiffs' beatings].' " *Bordanaro,* 871 F.2d at 1159 (quoting *Wierstak v. Heffernan,* 789 F.2d 968, 973 (1st Cir.1985)). The *Bordanaro* opinion lists the extensive evidence provided to jurors during trial establishing not only the existence of the "policy" but also the connection of that "policy" to the occurrences

at issue in that case. *Id.* at 1159–61 (listing seventeen examples of evidence provided by the plaintiff to establish that "the recruitment, training, supervision or discipline of [the] . . . police officers was grossly and flagrantly deficient.").

■ Here, by contrast, the Court is asked to infer, from only the June 7, 1992 incident involving Fowles, the existence of a *policy or custom* of not providing use-of-force guidelines. This Court cannot infer such a custom from one incident. *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). Since Fowles has failed to demonstrate a "well-settled and widespread" policy which was the "moving force" behind the deputies' alleged use of excessive force during his arrest, this Court will grant the County's motion for summary judgment on both counts.[6]

### B. The Officers' Liability

#### 1. Ronald Cameron

■ Fowles alleges that Ronald Cameron, a corrections officer employed by the Waldo County Sheriff's Department, violated Fowles's constitutional rights by failing to provide medical services to him while he was detained on June 7, 1992. The parties dispute which standard this Court must apply to Cameron's alleged conduct. The Defendants argue that under *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), an Eighth Amendment case, Fowles must demonstrate that Cameron displayed a "deliberate indifference to serious medical needs." *Id.* at 104, 97 S.Ct. at 291. Fowles correctly points out that the law of the Eighth Amendment does not apply to persons detained but who have not yet been convicted. *Ingraham v. Wright,* 430 U.S. 651, 671–72, 97 S.Ct.

---

6. The Court's conclusion that the County is not liable under section 1983 also disposes of Fowles's claim against the County under the Maine Civil Rights Act. The Maine law was

patterned after section 1983 and, therefore, the same municipal liability analysis applies. *Hegarty v. Somerset County,* 848 F.Supp. 257, 269 (D.Me.1994).

1401, 1412–13, 51 L.Ed.2d 711 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). However, Defendants are not entirely wrong either.

The Court of Appeals for the First Circuit has held that "[t]he due process clause of the Fourteenth Amendment does require the responsible governmental authorities to provide medical care to persons who have been injured while being apprehended by the police." *Gaudreault v. Salem*, 923 F.2d at 208 (citing *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983)). "The boundaries of this duty have not been plotted exactly; however, it is clear that they extend *at least* as far as the protection that the Eighth Amendment gives to a convicted prisoner." *Id.* (emphasis added). The latter observation suggests that an arrestee's failure to demonstrate "deliberate indifference to serious medical needs" on the part of officials overseeing his detention and care, the standard required under the Eighth Amendment, does not necessarily mean that he has not made an adequate showing under the due process clause.[7]

Here, Fowles alleges that his constitutional rights were violated by the fact that Cameron, a corrections officer on duty the night of Fowles's arrest, failed to secure medical care for Fowles's injuries when those injuries were clearly obvious and potentially serious at the time he arrived at the jail. Defendants argue on this motion that Fowles's injuries did not rise to the level of "objective-

ly serious medical needs" demanding immediate treatment. However, the record on this motion demonstrates that someone had written, "I recommend that Mr. Fowles be examined by a physician" on Fowles's intake form. Moreover, Fowles had recently been maced and, according to a "medical screening form" completed at the Waldo County Sheriff's Department at some point on June 7, 1992, Fowles had visible bruises and abrasions on his face, both arms, both shoulders, and left hip. Transcript of Deposition Testimony on Ronald Cameron at 60. Therefore, the record reflects that at least one individual involved with the processing of Fowles concluded that his injuries required medical attention and that that conclusion was ignored by Cameron, who was on duty when Fowles was received at the jail and for several hours thereafter. Cameron, who asserts that he has no recollection of Fowles or the circumstances of his presence at the jail, stated that he himself would not have accepted an arrestee in the condition described on these forms without requiring a medical assessment of the arrestee prior to his booking and incarceration. *Id.* at 61. These facts are sufficient to generate a genuine issue of material fact, even under a deliberate indifference standard. Accordingly, this Court will deny the motion with respect to Ronald Cameron.

### 2. The Sheriff's Deputies

 Defendants also seek summary judgment on all claims alleging the use of excessive force by the three sheriff's deputies involved with Fowles's arrest on June 7, 1992. Defendants ask this Court to conclude

---

7. In *Gaudreault,* the panel affirmed the entry of summary judgment for the defendants there since the plaintiff had failed to establish that he had any "serious medical needs" demanding immediate attention. *Gaudreault,* 923 F.2d at 208. Thus, the Court of Appeals for the First Circuit, while stating that arrestees' rights could extend beyond those of prisoners, nonetheless requires at least a showing of the "serious medical needs" component of the *Estelle* standard in order to succeed on a claim such as that asserted here. *Id.* Since the plaintiff in *Gaudreault* had not demonstrated that he had a serious medical need when arrested, the panel did not need to reach the issue of whether it would require a lesser showing than that required under the "deliberate indifference" component of the *Estelle* standard.

It appears that more than one court of appeals has struggled with the appropriate standard to be applied to arrestees' allegations of inadequate medical care for injuries received during arrest. In the absence of more specific direction from the Supreme Court on the parameters of an arrestee's due process rights to medical treatment, at least two courts have expressly adopted the entire standard set out in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and held that a due process violation is proven only where a plaintiff has demonstrated a defendant's deliberate indifference to serious medical needs. *Salazar v. Chicago,* 940 F.2d 233, 238–39 (7th Cir.1991); *Martin v. Gentile,* 849 F.2d 863, 870–71 (4th Cir.1988).

that they are entitled to qualified immunity on the record presented on this motion. Under section 1983, the deputies would be entitled to qualified immunity if this Court determines, after examination of the " 'objective reasonableness' of an official's conduct, ... whether the conduct violated 'clearly established ... constitutional rights.' " *Santiago v. Fenton,* 891 F.2d 373, 386 (1st Cir.1989) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The inquiry for this Court, therefore, is " 'whether a reasonable officer could have believed' that Defendant's actions were lawful 'in light of clearly established law and the information' that Defendant possessed." *McLain v. Milligan,* 847 F.Supp. 970, 974 (D.Me.1994) (quoting *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987)).

Since Fowles has alleged that the use of excessive force by the deputies occurred during the course of his arrest, the Court evaluates the Defendants' conduct under the Fourth and Fourteenth Amendments. *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 1867–68, 104 L.Ed.2d 443 (1989) ("[Excessive force] claims are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard."). The United States Supreme Court has clearly instructed that the Fourth Amendment's prohibition of unreasonable seizures permits courts to examine not only the basis but also the manner of a seizure of a person. *Id.* at 395, 109 S.Ct. at 1871 ("[T]he 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out."). The legal standard for the lawfulness of the force used by an officer in the course of an arrest is whether that force was "consistent with the amount of force that a reasonable police officer would think necessary to bring the arrestee into custody." *Gaudreault v. Salem,* 923 F.2d at 205.

In this case, Fowles has alleged that the deputies assaulted and maced him when he had done nothing to warrant use of such force. He alleges that a flashlight was used as a baton to hit him, and that he was punched, kicked, and grabbed by his hair. Such conduct, if it occurred without provocation, clearly violated Fowles's rights.[8] Defendants' version of the events, although largely at odds with Fowles's, acknowledges that Schade punched Fowles and that Stearns maced Fowles while he was handcuffed in the back seat of the cruiser. This Court concludes, therefore, that there are genuine issues of material fact regarding Defendants' conduct, and that the evidence, when considered in a light most favorable to Fowles, demonstrates that no reasonable police officer could conclude that Defendants' use of force was not in violation of Fowles's clearly established rights. The determination of the lawfulness of that conduct, therefore, is a question for the factfinder at trial.

### C. Maine Civil Rights Act

The Maine Civil Rights Act, like section 1983, authorizes civil actions by private parties for intentional violations of a person's constitutional rights through actual or threatened violence, damage, or destruction of property or trespass. 5 M.R.S.A. § 4682; *McLain,* 847 F.Supp. at 974 n. 5. Contrary to Defendants' assertions and as discussed above, the record presented on this motion demonstrates the presence of genuine issues of material fact regarding the constitutionality of the deputies' conduct and the motivations for their actions. Therefore, Defendants are not entitled to summary judgment on Count II of the Complaint.

### III. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment is *GRANTED* on Counts I and II with respect to Defendant Waldo

---

8. The Court also rejects Defendants' argument that they are entitled to summary judgment on the basis that during his deposition, Fowles stated that he could not be sure precisely which deputies delivered which blow or kick. These questions go to the weight of the evidence against Defendants, not whether they are entitled to judgment as a matter of law. Indeed, it would be a cruel irony if a plaintiff could not proceed to trial on his allegations of excessive force because, due to the assault itself, including the use of mace in his face, he could not see, and, therefore, could not identify which officers delivered each blow.

County only, and is *DENIED* with respect to all remaining Defendants.

So *ORDERED*.