**Joel HODSDON, Plaintiff,**

v.

**TOWN OF GREENVILLE, et al., Defendants.**

**No. Civ. 98–93–B.**

United States District Court, D. Maine.

May 6, 1999.

Joshua A. Tardy, Judge, Cox & Tardy, Newport, Maine, for plaintiff.

Jeffrey T. Edwards, Preti Flaherty, Portland, Maine, for defendants.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

This action arises out of the May 5, 1996 arrest of Plaintiff Joel Hodsdon ("Plaintiff") in Greenville, Maine on a charge of criminal OUI pursuant to Me.Rev.Stat. Ann. tit. 29–A, § 2411. Defendants are Officer Steven Hinckley ("Hinckley"), Greenville Police Chief Duane Alexander ("Alexander"), and the Town of Greenville ("the Town"). Plaintiff claims that he was seized without probable cause and by means of excessive force in violation of his rights under the Fourth Amendment of the United States Constitution and various state statutes. Plaintiff also asserts a number of common law tort claims including assault, battery, intentional infliction of emotional distress, and negligence.[1] Before the Court is Defendants' Motion for Summary Judgment on all Counts of Plaintiff's Complaint. For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## I. SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue as to any mate-rial fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Ti-rado–Delgado,* 990 F.2d 701, 703 (1st Cir. 1993). Facts may be drawn from "the pleadings, depositions, answers to inter-rogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c). For the purposes of summary judgment the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

## II. BACKGROUND

At approximately 11:00 P.M. on May 5, 1996, Plaintiff was driving his pick-up truck home from an establishment known as Whiskey Cove in Greenville, Maine. Plaintiff drove his truck onto Washington Street and turned left onto Prospect Street. At the end of Prospect Street, Plaintiff signaled, stopped, and turned right onto Pleasant Street. After proceed-ing on Pleasant Street for approximately four miles, Plaintiff signaled, came to a "rolling stop," and took a left onto Scam-mon Road. At the intersection of CCC

---

1. In his six-count Complaint, Plaintiff asserts claims against all Defendants for violation of his rights under the Fourth, Fifth, and Four-teenth Amendments of the United States Con-stitution (Count I), as well as his rights under Article 1, Sections 1, 6, and 6–A of the Maine Constitution, and Me.Rev.Stat.Ann. tit. 15, § 704, Me.Rev.Stat.Ann. tit. 17, § 2931, and Me.Rev.Stat.Ann. tit. 17–A, §§ 107–108 (Count II) for which he seeks damages under 42 U.S.C. § 1983 and the Maine Civil Rights Act, Me.Rev.Stat.Ann. tit. 5, § 4682 ("MCRA"). The Complaint also asserts claims for assault, battery, intentional inflic-tion of emotional distress (Count III), and negligence (Count VI), against Hinckley and Alexander, negligence against the Town (Count IV), and negligent supervision against Alexander (Count V).

In his Response to Defendants' Motion for Summary Judgment, Plaintiff states that he does not oppose summary judgment with re-spect to his claims under the Fifth Amend-ment, Article 1, Sections 1, 6, and 6–A of the Maine Constitution, and his negligence claim against the Town. Plaintiff also withdraws his demand for punitive damages.

The Court grants summary judgment as to the Fourteenth Amendment claim in Counts I and II to the extent that it is asserted as an independent constitutional violation since Plaintiff has articulated no theory of liability.

Road and Scammon Road, Plaintiff signaled, stopped, and turned right onto CCC Road. While driving on CCC Road, Plaintiff swerved to avoid numerous potholes.

At some point while Plaintiff was on CCC Road, Hinckley, a police officer for the town of Greenville, signaled to Plaintiff by turning on the lights of his police car that Plaintiff should pull over. Plaintiff stopped his truck and rolled down his window when Hinckley approached. Plaintiff asked Hinckley why he had been stopped and Hinckley replied that Plaintiff had run a stop sign. Hinckley then asked whether Plaintiff had been drinking. Plaintiff told Hinckley that he had had "two beers and spaced them out." Plaintiff admits that the odor of alcohol possibly was detectable on his breath during this exchange. Hinckley next asked Plaintiff to produce his driver's licence, registration, and proof of insurance. Plaintiff gave Hinckley his licence, but was told to "forget about" the registration and proof of insurance when he had difficulty retrieving the documents from the glove box. Plaintiff asserts that the glove box had a broken hinge and was blocked by items piled on the passenger seat.

Plaintiff claims that when he did not hand over his registration and insurance documentation, Hinckley became agitated and began to shout at him, causing him to feel the early symptoms of a panic attack. Hinckley ordered Plaintiff to get out of his truck and sit in the police car where he was subjected to a series of field sobriety tests. At Hinckley's request, Plaintiff successfully recited the alphabet and performed a manual dexterity test.[2] He also was able to tip his head back and touch his nose with the index finger of each hand and perform a heel-to-toe sobriety test, despite the fact that it was conducted on a slope dotted with potholes.[3] Plaintiff was

unable to comply with Hinckley's request to write the alphabet, but he explains that this was due to the loud volume of the police radio and to anxiety caused by Hinckley's shouting.

Following the field sobriety examination, Hinckley informed Plaintiff that he was under arrest for driving under the influence. According to Plaintiff, Hinckley shouted at him to put his hands on the hood of the car and spread his legs. Plaintiff called Hinckley a "jerk", but followed his orders. Hinckley then kicked Plaintiff in the calf and handcuffed him behind his back. Plaintiff claims that Hinckley fastened the handcuffs in an unnecessarily tight manner and slammed his head down on the police car, denting the hood. Plaintiff responded by calling Hinckley obscene names.

After handcuffing Plaintiff, Hinckley attempted to place him in the police car. Plaintiff resisted. Hinckley then ordered Plaintiff to lie face down on the ground. When Plaintiff hesitated, Hinckley tackled him and held him on the ground by placing a knee in Plaintiff's back while pulling up on the handcuffs. According to Plaintiff, Hinckley grabbed him by the hair and slammed his face onto the gravel road several times.[4]

Hinckley got off Plaintiff but tackled him again when he attempted to get up, hitting him in the ribs and pushing his face into the ground. During this altercation, Plaintiff shouted at Hinckley to stop hitting him. These shouts were overheard by Vincent Waldron, Plaintiff's friend, who was listening to a police scanner.

While Hinckley was holding Plaintiff on the ground for the second time, Alexander arrived at the scene. According to Plaintiff, Alexander and Hinckley placed him in the police car with unnecessary force.

---

2. Hinckley claims that Plaintiff was unable to recite the alphabet.

3. Hinckley denies that Plaintiff was able to touch his nose or walk heel-to-toe.

4. Defendants deny that Hinckley shouted at Plaintiff, kicked him, applied the handcuffs too tightly, slammed his head into the ground, or otherwise acted inappropriately or with excessive force.

When Plaintiff complained to the officers about being "manhandled" one of them struck him on the head from behind with a baton or flashlight. On the way to the police station, Alexander and Hinckley stopped the police car, removed Plaintiff's handcuffs, and allowed him to urinate. The officers then replaced the handcuffs and proceeded to the police station.[5]

Plaintiff was charged with operating a motor vehicle while under the influence of alcohol in violation of Me.Rev.Stat.Ann. tit. 29–A, § 2411.

## III. DISCUSSION

### A. Fourth Amendment

Count I of Plaintiff's Complaint asserts that Defendants violated his Fourth Amendment rights by arresting him without probable cause and by means of excessive force, and seeks damages pursuant to 42 U.S.C. § 1983. In their Motion for Summary Judgment, Defendants argue that Hinckley had probable cause to arrest Plaintiff and that the arrest was accomplished without excessive force. Defendants further argue that Hinckley and Alexander are entitled to qualified immunity. As discussed in detail below, the Court concludes that there was probable cause for Plaintiff's arrest, but that genuine issues of material fact preclude summary judgement as to Hinckley on the excessive force claim.

### 1. Probable Cause

■ The Fourth Amendment requires that warrantless arrests be based on probable cause. See Gerstein v. Pugh, 420 U.S. 103, 113–14, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); Alexis v. McDonald's Restaurants of Mass., Inc., 67 F.3d 341, 349 (1st Cir.1995). The measure of probable cause is whether "at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant

a prudent person in believing that the defendant had committed or was committing an offense." United States v. Bizier, 111 F.3d 214, 217 (1st Cir.1997) (internal quotations omitted). Thus, while "probable cause requires more than mere suspicion, it does not require the same quantum of proof as is needed to convict." Logue v. Dore, 103 F.3d 1040, 1044 (1st Cir.1997).

In his Response to Defendants' Motion for Summary Judgment, Plaintiff argues that there is a genuine issue of material fact as to whether Hinckley and Alexander had probable cause to arrest him for driving under the influence. Plaintiff points to evidence that he stopped his vehicle at intersections, produced his driver's licence at Hinckley's request, and passed several field sobriety tests. Plaintiff also notes that there are reasonable exculpatory explanations for why his truck swerved on CCC Street, why he failed to produce his registration and insurance information, and why he was unable to write the alphabet and may have appeared unable to perform the heel-to-toe test.

■ While there may be genuine issues of material fact as to some aspects of Plaintiff's behavior, the Court finds that there is more than enough undisputed evidence to support a prudent officer's belief that Plaintiff was driving his vehicle under the influence of alcohol. First, Plaintiff admits that he rolled through the stop sign at the corner of Pleasant Street and Scammon Road shortly before being pulled over by Hinckley for failing to stop. Second, Hinckley observed Plaintiff's truck swerving as it proceeded on CCC Street. While Plaintiff contends that he was swerving to avoid potholes, his driving nevertheless would have appeared erratic from the perspective of a reasonable officer in Hinckley's position. Third, Plaintiff told Hinckley that he had been drinking and conceded that, as Hinckley claims, the

---

**5.** Defendants deny that Hinckley and Alexander "manhandled" Plaintiff into the police car or hit him on the head.

officer may have smelled alcohol on his breath. Fourth, Plaintiff did not promptly produce his registration and insurance information. Though Plaintiff maintains this was because the hinge on his glove compartment was faulty and there were items piled on the passenger seat of his truck, he does not argue that these problems were so obvious that Hinckley could not have reasonably concluded that the delay was due to alcohol impairment. Finally, Plaintiff was unable comply with Hinckley's order to write the alphabet. Plaintiff suggest that the Court should discount this fact based on his explanation that he was distracted by the noise of the police radio and Hinckley's shouting. The Court concludes, however, that a prudent officer would not expect the sound of a police radio to distract Plaintiff to the extent that he was unable to write the alphabet. Moreover, even assuming that Hinckley was shouting, Plaintiff does not allege that Hinckley's behavior was such that a reasonable person in Hinckley's position would have believed that his own conduct, rather than the influence of alcohol, prevented Plaintiff from writing the alphabet.

The Court is satisfied that undisputed evidence in this case amounts to probable cause as a matter of law.[6] Thus, summary judgment is granted with respect to all Defendants on Count I to the extent that it alleges a claim for a Fourth Amendment violation based on lack of probable cause.

6. The Court need not reach the issue of qualified immunity raised by Defendants with respect to this claim because Plaintiff has failed to establish a Fourth Amendment violation based on the absence of probable cause. *See Aversa v. United States,* 99 F.3d 1200, 1215 (1st Cir.1996) ("a court may ... bypass the qualified immunity analysis if it would be futile because current law forecloses the claim on the merits").

7. In his Response to Defendants' Motion for Summary Judgment, Plaintiff refers to his Section 1983 municipal liability claim as Count IV of his Complaint. After careful examination of the Complaint, however, the

2. Excessive Force

In addition to prohibiting arrests without probable cause, the Fourth Amendment protects individuals against the unreasonable use of force by police. Plaintiff alleges that Hinckley and Alexander used force in excess of that permitted by the Fourth Amendment to execute his arrest. He further claims that under Section 1983 the Town is liable for the officers' constitutional violation and Alexander is liable for Hinckley's unreasonable use of force based on his failure to train, supervise, and discipline the junior officer.[7]

a. Officers' Substantive Liability

 In determining whether force employed in connection with an arrest was reasonable; a court looks to "the specific facts at issue, paying particular attention to the crime committed, its severity, the threat of danger to the officer and society, and 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Comfort v. Town of Pittsfield,* 924 F.Supp. 1219, 1228 (D.Me.1996) (quoting *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). This determination is informed by the principle that reasonableness must be judged from the perspective of the officer at the scene, rather than hindsight, and a recognition that "police officers are often forced to make split-second judgments ... in circumstances that are tense, uncertain and rapidly evolving." *Id.* (quoting *Graham,* 490 U.S. at 397, 109 S.Ct. 1865).

Court finds that the municipal liability claim is contained in Count I, while Count IV states a claim against the Town for common law negligence. As noted above, Plaintiff has withdrawn his negligence claim against the Town.

As made clear by his Response to Defendants' Motion for Summary Judgment, Plaintiff's Section 1983 claim against Alexander for supervisory liability is stated in Count V of his Complaint, notwithstanding Defendants' treatment of Count V as a claim for common law negligence in their Motion for Summary Judgment.

In response to Plaintiff's claim of excessive force against Hinckley and Alexander, Defendants argue both that the degree of force used was appropriate and reasonable under the circumstances and that the officers are entitled to qualified immunity. Regardless of the rubric under which the issue is analyzed, however, the Court finds that the focus of its inquiry in this case must be the reasonableness of the officers' actions. As the First Circuit has observed in connection with a similar claim of excessive force,

> [i]n theory, substantive liability and qualified immunity are two separate questions and, indeed, may be subject to somewhat different procedural treatment. In police misconduct cases, however the Supreme Court has used the same "objectively reasonable" standard in describing both the constitutional test of liability and the Court's own standard for qualified immunity.

*Roy v. Inhabitants of the City of Lewiston,* 42 F.3d 691, 695 (1st Cir.1994) (internal citations omitted); *but see Hilaire v. City of Laconia,* 885 F.Supp. 349, 355–358, *aff'd,* 71 F.3d 20 (1995) (finding police officer entitled to qualified immunity where law concerning whether officer "who legitimately uses deadly force in self-defense nevertheless violates the Fourth Amendment by increasing the likelihood that deadly force will become necessary was not clearly established").

### i. Hinckley

■ The reasonableness of Hinckley's conduct depends on the facts surrounding Plaintiff's arrest, many of which are in dispute. Plaintiff claims that Hinckley kicked him in the leg, handcuffed him tightly enough to cause pain, and slammed his head onto the hood of the police car. Plaintiff also alleges that Hinckley "manhandled" him into the police car despite his lack of resistance. After he responded by resisting and Hinckley wrestled him to the ground, Plaintiff claims that Hinckley grabbed him by the hair and slammed his head into the gravel road several times. When he attempted to get up, Hinckley tackled him again, hitting him in the ribs. Plaintiff presents evidence that at about this time, he was overheard on a police scanner asking someone to stop hitting him.

Plaintiff further claims that Hinckley and Alexander placed him in the police car with unnecessary force and that someone hit him over the head with a baton or flashlight when he complained about the rough treatment. Plaintiff also states that his handcuffs were removed and he was allowed to urinate on the way to the police station.

Defendants counter that in the face of Plaintiff's admitted profanity and resistance, it was objectively reasonable to take physical hold of Plaintiff, restrain his movements, hold him on the ground, and physically place him in the cruiser. They deny that Hinckley kicked Plaintiff, slammed his face into the ground, or hit him with a baton or flashlight.

While not every shove in the course of arrest gives rise to a constitutional violation, see *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Court is convinced that a reasonable jury, accepting Plaintiff's version of events, could find Hinckley's actions unreasonable. *See McLain v. Milligan,* 847 F.Supp. 970, 976 (D.Me.1994) (finding that alleged conduct of police officer who, after handcuffing plaintiff, "kicked [his] legs out from under him, forced him to his knees, slammed his chest and face onto the concrete, placed his knee down on Plaintiff's back, picked his head up by the hair and slammed his face down on to the pavement," if true, violated Fourth Amendment). Unlike the plaintiff in *McLain,* Plaintiff admits that he resisted Hinckley's efforts to put him in the police car, but alleges that this resistance was a response to Hinckley's rough treatment. Under these circumstances, slamming Plaintiff's face into the road could be viewed as an extreme response to any

safety or flight risk that he posed, especially given the fact that Hinckley and Alexander released him from the police car and handcuffs on the way to the police station. Moreover, Plaintiff's allegation that before he offered any resistance, Hinckley kicked him, banged his head on the hood of the police car forcefully enough to dent it, and handcuffed him with unnecessary force creates a genuine issue of fact as to the reasonableness of Hinckley's conduct.

### ii. Alexander

Alexander did not arrive on the scene until much of the action about which Plaintiff complains had already occurred. Plaintiff alleges only that Alexander helped Hinckley "manhandle" him into the police car for the second time and that while Alexander was present, someone hit him over the head with a baton or flashlight when he asked a question. While a gratuitous blow to the head with a blunt instrument would clearly constitute excessive force, there is no evidence that it was Alexander who dealt this blow, nor is there evidence that Alexander would have had a "realistic opportunity" to prevent Hinckley from delivering such a swift and spontaneous attack. *See Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n. 3 (1st Cir.1990) (finding that although officer at scene "who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance," officer cannot be held liable if he could not have prevented attack). The Court finds that Plaintiff's vague allegation of manhandling, standing alone, is not sufficient to create a genuine issue of fact as to excessive force.

### b. Alexander's Supervisory Liability

To demonstrate a supervisor's liability under Section 1983 for the constitutional violation of a subordinate, a plaintiff must show that (i) "the supervisor's conduct or inaction amounts to either deliberate, reckless or callous indifference to the constitutional rights of others," and that (ii) "an affirmative link exists between the street-level constitutional violation and the acts or omissions of the supervisory officials." *Comfort v. Town of Pittsfield*, 924 F.Supp. 1219, 1231 (D.Me.1996) (citing *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir.1989)). In this case, Plaintiff has put forth no evidence whatsoever concerning Alexander's training and discipline of Hinckley or lack thereof prior to Plaintiff's arrest, let alone any evidence showing that such training or discipline contributed to Hinckley's alleged use of excessive force. Indeed, Plaintiff's sole argument is that Alexander negligently failed to supervise Hinckley to the extent that Alexander was "acting in a supervisory capacity on May 5, 1996" and "actually participated in the constitutional violation." (Pl's Resp. to Defs.' Mot. Summ. J. at 9.) Plaintiff's attempt to piggyback a supervisory liability claim onto his substantive liability claim must fail, however, given the Court's grant of summary judgment to Defendants with regard to Alexander's substantive liability for use of excessive force.

### 3. Municipal liability

A municipality may incur Section 1983 liability when its official policies or customs cause a constitutional deprivation. *See Comfort*, 924 F.Supp. at 1233. To prevail on a municipal liability claim, a plaintiff must show (1) a municipal custom or policy, and (2) that this custom or policy was "the cause of and the moving force behind the deprivation of constitutional rights." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir.1989). Here, Plaintiff argues that the Town is liable for violating his Fourth Amendment rights "based on Alexander's conduct, and his authority as the decision maker over police policy." (Pl.'s Resp. to Defs.' Mot. Summ. J. at 10.)

This argument is not persuasive. Regardless of whether Alexander could be characterized as a policymaker, *see Comfort*, 924 F.Supp. at 1233–34, Plaintiff has

presented absolutely no evidence that he was subjected to excessive force by Hinckley pursuant to some police policy instituted or acquiesced to by Alexander. *See id.* (denying summary judgment based on genuine issue of fact as to whether police actions were taken pursuant to police policy in light of evidence that police chief "encouraged, demanded and even applauded the use of unconstitutionally excessive force against arrestees"); *Bordanaro,* 871 F.2d at 1156 (finding court properly denied defendants' motion for judgment notwithstanding verdict on municipal liability claim based on evidence that police department had "longstanding, wide-spread, and facially unconstitutional practice of breaking down doors without a warrant when arresting a felon"). The Court grants summary judgment to Defendants on Count I with respect to the municipal liability claim.

**8.** To the extent that Count II also seeks damages for a Fourth Amendment violation pursuant to the MCRA, the Court disposes of this claim in the same way that it disposed of Plaintiff's Fourth Amendment claims under Section 1983. *See Grenier v. Kennebec County,* 733 F.Supp. 455, 458 n. 6 (D.Me.1990) (noting that MCRA "was patterned after 42 U.S.C. § 1983"); *Comfort,* 924 F.Supp. at 1236 (granting summary judgment on Section 1983 and MCRA excessive force claims on same basis).

**9.** The statute provides:

No person may, by force or threat of force, intentionally injure, intimidate or interfere with, or intentionally attempt to injure, intimidate or interfere with or intentionally oppress or threaten any other person in the free exercise or enjoyment of any right or privilege, secured to him by the Constitution of Maine or laws of the State or by the United States Constitution or laws of the United States.

Me.Rev.Stat.Ann. tit. 17, § 2931 (West Supp. 1998–99).

**10.** Me.Rev.Stat.Ann. tit. 17–A, § 107 is entitled "Physical force in law enforcement," while Me.Rev.Stat.Ann. tit. 17–A, § 108 is entitled "Physical force in defense of a person."

**11.** The statute provides in relevant part:

**B. State Statutory Claims**

In Count II of his Complaint, Plaintiff seeks recovery against all three Defendants under the MCRA for violation of his rights under Me.Rev.Stat.Ann. tit. 17, § 2931, Me.Rev.Stat.Ann. tit. 17–A, §§ 107–108, and Maine Rev. Stat. Ann. tit. 15, § 704.[8] As an initial matter, the Court observes that Me.Rev.Stat.Ann. tit. 17, § 2931[9] and Me.Rev.Stat.Ann. tit. 17–A, §§ 107–108[10] are criminal statutes and as such cannot form a basis for civil liability under the MCRA. *See McLain v. Milligan,* 847 F.Supp. 970, 972 n. 1 (D.Me.1994) (noting with approval plaintiff's withdrawal of claim under Me.Rev.Stat.Ann. tit. 17, § 2931 "as that provision is limited to criminal, not civil actions"). In contrast, Me.Rev.Stat.Ann. tit. 15, § 704 provides for civil liability against police officers who act "wantonly or oppressively" in executing an arrest.[11] In light of the Court's

Every ... police officer shall arrest and detain persons found violating any law of the State or any legal ordinance or bylaw of a town, until a legal warrant can be obtained and may arrest and detain such persons against whom a warrant has been issued though the officer does not have the warrant in his possession at the time of the arrest, and they shall be entitled to legal fees for such service; but if, in so doing, he acts wantonly or oppressively, or detains a person without a warrant longer than is necessary to procure it, he shall be liable to such person for the damages suffered thereby.

Me.Rev.Stat.Ann. tit. 15, § 704 (West 1980). The statute has been assumed to prohibit the unreasonable use of force as well as arrests without probable cause. *See Leach v. Betters,* 599 A.2d 424, 426 (Me.1991) (presuming unreasonable use of force constitutes wanton and oppressive conduct).

There has been some uncertainty about whether Me.Rev.Stat.Ann. tit. 15, § 704 survived the enactment of the Maine Tort Claims Act, Me.Rev.Stat.Ann. tit. 14, § 8111. Addressing this issue in 1991, the Maine Law Court assumed "that section 704 remain[ed] in effect and vital after the enactment of the Maine Tort Claims Act." *See Leach,* 599 A.2d at 426. Writing for the District of Maine, Judge Hornby later found that the MTCA abrogates Section 704, but noted that the Court would "grant summary judgment in favor of

findings with regard to Plaintiff's Fourth Amendment claims, the Section 704 claim against Hinckley alone survives Defendants' Motion for Summary Judgment because there exists a genuine issue of material fact concerning his use of force.

### C. Tort Claims

Counts III and VI of Plaintiff's Complaint assert claims against Hinckley and Alexander for assault, battery, intentional infliction of emotional distress (Count II), and negligence (Count VI). Defendants seek summary judgment on these claims based on the personal immunity provision of the Maine Tort Claims Act, Me.Rev.Stat, Ann. tit. 14, § 8111 ("MTCA"). The MTCA generally immunizes governmental employees from civil liability for intentional and discretionary acts.[12] A police officer's use of force to execute a warrantless arrest is considered discretionary conduct under the MTCA. *See Leach v. Betters*, 599 A.2d 424, 426 (Me.1991); *McLain v. Milligan*, 847 F.Supp. 970, 977 (D.Me.1994). An officer is immune from civil liability for discretionary conduct unless the conduct so "clearly exceeded, as a matter of law, the scope of any discretion he could have possessed in his official capacities as a police officer."

defendant" even if "an exception to immunity for 'wanton and oppressive' conduct still existed." *Jackson v. Inhabitants of the Town of Sanford*, Civ. No. 94–12–P–H, 1994 WL 589617 at *7 n. 2 (D.Me. Sept.23, 1994). In 1995, the Maine Law Court explicitly declined to reach the abrogation issue, yet concluded that "assuming that section 704[was] applicable to the instant case," the defendants did not engaged in wanton and oppressive conduct. *See Creamer v. Sceviour*, 652 A.2d 110, 115 (Me.1995). One year later, this Court denied summary judgment to defendants on a Section 704 claim, but reserved judgment as to the statute's ultimate validity. *See Comfort*, 924 F.Supp. at 1236 n. 15 (Brody, J).

Against this uncertain precedential backdrop and in the absence of any discussion of the issue by Defendants, the Court cannot conclude that Plaintiff's claim is foreclosed.

12. The MTCA provides in relevant part:

*Polley v. Atwell*, 581 A.2d 410, 414 (Me. 1990).

Applying this standard, the Court finds that Alexander is entitled to discretionary immunity as a matter of law for his limited role in Plaintiff's arrest. "Manhandling" Plaintiff into the police car does not clearly exceed the scope of Alexander's discretion as a police officer, and Plaintiff sets forth no evidence that it was Alexander who hit him with the flashlight or baton. The Court further finds, however, that the existence of a genuine issue of material fact as to whether Hinckley's conduct clearly exceeded the scope of his discretion precludes summary judgment with respect to him. *See Comfort*, 924 F.Supp. at 1237 (finding genuine issue of material fact as to whether police officers exceeded scope of discretion based on evidence that they handcuffed plaintiff, hit him in head, and shoved head against door jamb).

## V. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment. Specifically, the Court:

(1) GRANTS Defendants' Motion for Summary Judgment on Counts I & II as they relate to arrest without probable cause in violation of the Fourth Amendment;

Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:

. . .

C. Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid;

. . .

E. Any intentional act or omission within the course and scope of employment provided that such immunity shall not exist in any case in which an employee's actions are found to have been in bad faith.

Me.Rev.Stat.Ann. tit. 14, § 8111(1)(C) & (E) (West 1997).

(2) DENIES Defendants' Motion for Summary Judgment on Counts I & II as they relate to Hinckley's alleged use of excessive force in violation of the Fourth Amendment and GRANTS summary judgment on Counts I & II as they relate to Alexander's alleged use of excessive force in violation of the Fourth Amendment and to the Town's liability for the alleged use of excessive force by Alexander and Hinckley;

(3) GRANTS Defendants' Motion for Summary Judgment on Counts I & II as they relate to the Fifth and Fourteenth Amendment of the United States Constitution;

(4) GRANTS Defendants' Motion for Summary Judgment on Count II as it relates to Article 1 Sections 1, 6, and 6–A of the Maine Constitution, Me.Rev.Stat.Ann. tit. 17, § 2931, and Me.Rev.Stat.Ann. tit. 17–A, §§ 107–108;

(5) DENIES Defendants' Motion for Summary Judgment on Count II at it relates to Hinckley's violation of Me.Rev.Stat.Ann. tit. 15, § 704 and GRANTS Defendants' Motion as it relates to Alexander and the Town's violation of Me.Rev.Stat.Ann. tit. 15, § 704;

(6) DENIES Defendants' Motion for Summary Judgment on Count III as it relates to the assault, battery, and intentional infliction of emotional distress claims against Hinckley and GRANTS summary judgment as it relates to the assault, battery, and intentional infliction of emotional distress claims against Alexander;

(7) GRANTS Defendants' Motion for Summary Judgment on the Count IV common law negligence claim against the Town;

(8) GRANTS Defendants' Motion for Summary Judgment on the Count V claim against Alexander for negligent supervision; and

(9) DENIES Defendants' Motion for Summary Judgment on Count VI as it relates to the negligence claim against Hinckley and GRANTS summary judgment as it

relates to the negligence claims against Alexander.

*SO ORDERED.*