STATE OF MAINE                                    SUPERIOR COURT
                                                    CIVIL ACTION
YORK, ss.                                         DOCKET NO. CV-05-161

                                                  GAD -Yor - ia

DONNA MURRAY,

          Plaintiff

     v.                              **ORDER**

MICHAEL MURRAY,

          Defendant

DONALD L. GARBRECHT
LAW LIBRARY

JAN 16 2007

This matter comes before the Court on Defendant Michael Murray's motion for partial summary judgment pursuant to M.R. Civ. P. 56 and Plaintiff Donna Murray's cross-motion for partial summary judgment. Also before this Court is Defendant's motion to strike Plaintiff's cross-motion for summary judgment and specific paragraphs of her statement of material facts.

## FACTUAL BACKGROUND

Plaintiff, Donna Murray ("Plaintiff") married Defendant, Michael Murray ("Defendant") in 1983. They had begun dating in 1977, while still in high school, and, according to Plaintiff, the relationship was abusive almost from the beginning. Plaintiff's allegations include that Defendant isolated her from family and friends, made insulting and degrading remarks to her on numerous occasions, and threatened her. She alleges that Defendant physically abused her on multiple occasions over the duration of their relationship. Also, Plaintiff alleges in her affidavit that he assaulted her after he overheard her speaking with another abused woman, which made her reluctant to communicate her situation to others. According to Plaintiff, she remained

in the marriage, believing that Defendant's behavior stemmed from alcohol and drug abuse and would change if those underlying issues were addressed.

The parties had a daughter born in 1986. They resided together in Maine until they separated in 2002. Defendant claims that the marriage ultimately dissolved because he believed that Plaintiff was unfaithful to him and exposed him to the AIDS virus. Plaintiff, however, maintains that she was not unfaithful, but that Defendant was on several occasions. Defendant filed for divorce in 2003, and Plaintiff counterclaimed for divorce. The Springvale District Court entered a divorce judgment on August 18, 2004 on the grounds of irreconcilable differences, awarding shared parental rights and specifying a property division. Under this judgment, Plaintiff was obligated to either refinance the marital home to pay Defendant his equity or sell the home, dividing the proceeds evenly with Defendant. She appealed the property division order to the Law Court, but the judgment was affirmed.

On May 20, 2005, Plaintiff filed the instant lawsuit, alleging violations of Maine's Civil Rights Act ("MCRA") (Count I), intentional infliction of emotional distress (Count II), and punitive damages (Count III). Defendant claims that Plaintiff is attempting to re-litigate the divorce judgment as it pertains to property. He has moved for summary judgment on Counts I and III on the grounds that MCRA does not provide a remedy based on Plaintiff's allegations and that the punitive damage claim is not a separate cause of action. He also moves to strike portions of her opposing statement of material facts ("SMF") because they do not comply with the requirements of M.R. Civ. P. 56(h). Plaintiff has filed a cross-motion for summary judgment on Count I, which Defendant moves to strike as untimely.

## DISCUSSION

1.  <u>Summary Judgment Standard</u>.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. When a material fact is contested, "the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. This Court reviews the facts "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

2.  <u>Is Summary Judgment for Defendant Warranted on Count I?</u>

The MCRA provides a cause of action for intentional interference with one's enjoyment of constitutionally protected or legal rights. 5 M.R.S. § 4682 (2005). In particular, the Act protects citizens from:

> [a]ny person, whether or not acting under color of law, [who] intentionally interferes or attempts to intentionally interfere by physical force or violence against a person . . . with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State . . . .

*Id.* § 4682(1-A). This section creates a private right of action "for legal or equitable relief" in the Superior Court. *Id.* § 4682(1-A)-(2).

As one writer describes it, the MCRA, sometimes called the "hate crimes law," was meant "to apply only to situations in which there is violence or threats of violence or damage to property or threats of damage to property that are motivated by bias

3

against categories identified by the legislature." Christopher Parr, *The Maine Civil Rights Act: History, Enforcement, Application, and Analysis*, 53 ME. L. REV. 189, 192 (2001). Those categories which are explicitly protected include: "race, color, religion, sex, ancestry, national origin, physical or mental disability or sexual orientation." 5 M.R.S. § 4684-A (2005).[1] The applicability of the MCRA to domestic violence claims is an issue of first impression in Maine.

The protections of the MCRA have been extended beyond the explicitly designated categories. For example, the United States District Court for the District of Maine has addressed the MCRA in the context of excessive force claims against law enforcement officers. *Hodson v. Town of Greenville*, 52 F. Supp. 2d 117, 119 (D. Me. 1999). In *Hodson*, the plaintiff had been stopped by an officer for a traffic violation and was ultimately arrested for operating under the influence. *Id.* at 120. During the course of the plaintiff's arrest, which he resisted, the plaintiff claimed that the officer subjected him to physical violence in violation of his constitutional and statutory rights. *Id.* at 121. Rejecting the MCRA claim, in which he argued that the officer's behavior violated state statutes dealing with "physical force by law enforcement officers" and "physical force in defense of a person," the Court stated that "criminal statutes . . . cannot form a basis for civil liability under the MCRA." *Id.* at 125. The plaintiff's claim that the arresting officer violated his rights under a civil statute, however, survived summary judgment. *Id.* at 126.

Additionally, the Law Court addressed the MCRA's applicability in a civil rights action brought by the Attorney General against an egg farmer who discriminated

---

[1]     The MCRA does not expand citizens' rights; instead, it is an enforcement mechanism designed by the legislature to protect preexisting rights under statutory, common, or Constitutional law. *Phelps v. President & Trustees of Colby College*, 595 A.2d 403, 406 (Me. 1991).

against his employees.[2] *State v. DeCoster*, 653 A.2d 891, 892 (Me. 1995). DeCoster's workers alleged that he prevented service professionals, relatives, and friends from visiting them at the company-owned mobile homes in which they resided. *Id.* at 892. In particular, they claimed that DeCoster sought to prevent providers with the Rural Community Action Ministry, including attorneys, from visiting them in their mobile homes. *Id.* at 892-893. He did so by erecting a "no admittance" sign, and his staff "threatened, intimidated, or harassed" providers who tried to work with the employees, causing them to stop their outreach efforts. *Id.* at 893. Ultimately, the Law Court affirmed the trial court's finding that this pattern of behavior constituted "intentional interference" with the tenants' right to quiet enjoyment of their homes in violation of the MCRA. *Id.* at 895. Also, the Court went on to note that DeCoster also interfered with the employees' right to receive visitors – a right which is "so fundamental it requires no statutory authority." *Id.* at 893 n.1.

If the MCRA has been construed to provide a remedy for the intentionally violent or threatening interference with tenants' right of quiet enjoyment, a right arising from both statutory and common law principles, then it would certainly seem the MCRA should protect the right of one to be free from violence in one's own home. This is particularly so given the legislature's clear intent to protect Maine citizens from acts of domestic violence.[3] Indeed, Maine's Constitution provides that "pursuing and obtaining safety and happiness" is the right of all citizens. ME. CONST. ART. I, §1. Unlike the plaintiff in *Hodson*, who sought to use the MCRA to enforce the criminal law, here, Plaintiff relies on civil and constitutional protections supported by the Maine

---

[2]    Although the Court noted that one-third of the employees were Hispanic, its rationale was not based on the employees' national origin. *Id.* at 892.

[3]    *See, e.g.*, 19-A M.R.S. § 4001 (2005) (protection from abuse statute is to be "liberally construe[d]" to recognize the threat of domestic violence as a "serious crime against the individual and society," to protect victims, and to prevent victimization).

legislature's longstanding recognition of domestic violence as a serious threat to society. Viewing Plaintiff's allegations favorably for purposes of this motion, Defendant's alleged conduct over the course of the parties' relationship is more egregious than the intimidation and harassment that occurred in *DeCoster*.[4]

### 3. Is Summary Judgment for Defendant Warranted on Count III?

Maine law has long recognized punitive damages as a potential aspect of a plaintiff's recovery under certain circumstances, and awarding them is within a fact finder's discretion. *Hanover Ins. Co. v. Hayward*, 464 A.2d 156, 158 (Me. 1983). To merit punitive damages, a plaintiff must allege and prove that the defendant has engaged in the challenged conduct maliciously, and this has often been pled as a separate count. *See Staples v. Bangor Hydro-Elec. Co.*, 561 A.2d 499, 502 (Me. 1989) (reversing a trial court's grant of summary judgment on a separate punitive damages count in a tort case).

Here, Defendant argues that punitive damages are a derivative claim, not a separate cause of action, and, therefore, he is entitled to judgment on this count. Plaintiff counters that, while they are not a separate cause of action, punitive damages may be, and often are, pled in a separate count of the complaint.

Both Count I and Count II assert intentional conduct, which, if proven by the standard of clear and convincing evidence, could support a finding of malicious conduct. Though this is not an independent cause of action, pleading punitive damages separately is common practice to put the parties and the court on notice of the damage claim. To the extent that Defendant seeks a ruling at this point in the proceeding that punitive damages are not a potentially available remedy, that request is Denied.

---

[4] The Court need not decide at this juncture whether this conduct was motivated by animus based on gender, as Plaintiff contends, but this sort of behavior seems to be the kind of violence and intentional interference with basic rights that the MCRA was intended to address.

4.    Defendant's Motion to Strike Portions of Plaintiff's Statement of Material Facts.

Defendant's motion to strike the SMF is denied; however, this should not be construed as a ruling on the admissibility of evidence at trial.

5.    Plaintiff's Cross-Motion for Partial Summary Judgment.

Plaintiff has also filed a cross-motion for summary judgment on Count I. This motion, however, consists of one paragraph and was filed on September 6, 2005, after the August 15 deadline set by this Court in its July 2005 stipulated scheduling order. Because the motion was not timely filed, Defendant's motion to strike is granted.

The entry will be as follows:

1)    The Defendant's Motion for Partial Summary Judgment is Denied.

2)    The Defendant's Motion to Strike Plaintiff's Motion for Summary Judgment is Granted.


Dated:      December *13*, 2006

G. Arthur Brennan
Justice, Superior Court

Dana E. Prescott, Esq. - PL
Dori F. Chadbourne, Esq. - DEF

7